# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR08-0072 |
| vs. | REPORT AND RECOMMENDATION |
| ISOM ROGERS, | |
| Defendant. | |

On the 1st day of August 2012, this matter came on for hearing on the Motion to Determine Default and Additional Sanctions (docket number 380) filed by the United States on July 10, 2012.[1] The Government was represented by Assistant United States Attorney Martin J. McLaughlin. Defendant Isom Rogers appeared telephonically and was unrepresented by counsel.[2]

## I. RELEVANT FACTS AND PROCEEDINGS

The relevant facts are undisputed. Isom Rogers pleaded guilty to two counts of bank fraud and was sentenced on October 21, 2010 to 120 months of imprisonment. Rogers was also ordered to pay a special assessment of $200 and restitution in the amount of $18,921.09. The judgment ordered Rogers to make monthly payments of at least $25 per quarter.

> While incarcerated, the defendant shall make monthly payments in accordance with the Bureau of Prison's Financial Responsibility Program. The amount of the monthly payments shall not exceed 50% of the funds available to the defendant through institution or non-institution (community) resources and shall be at least $25 per quarter.

Judgment in a Criminal Case (docket number 324) at 7.

---

[1] The motion has been referred to me for a report and recommendation. *See* docket number 382.

[2] Defendant is an inmate at FCI-Oxford.

Rogers has been incarcerated at FCI-Oxford since July 5, 2011. Rogers testified that upon arrival at FCI-Oxford, he signed an agreement to pay $25 per quarter on his obligation to the Court, starting September 2011. Initially, Rogers was employed "off-and-on" in general maintenance as a laborer. Rogers was imprecise regarding his earnings, but testified that the maximum he could earn was $5.25 per month. In February or March 2012, Rogers was placed in "the SHU" (special housing unit) pending a transfer to another institution.[3] Accordingly, Rogers has not earned any income for the past five or six months. Rogers estimated that his total earnings at FCI-Oxford have not exceeded $30. During his time in the SHU, however, Rogers' family has deposited $100 in his account ($50 X 2). According to Rogers, the current balance in his account is "zero, 67¢ I think." Rogers testified that the money he earned and received from his family was spent for "hygiene."

Rogers admits that he has not paid any amount toward his financial obligation. Dean Gleason, a unit counselor at FCI-Oxford, responded to an email from the United States Attorneys Office on June 19, 2012, stating that Rogers "is on Refuse Status and will remain in that status. He refuses to make any payments."[4] According to Rogers, "refuse status" includes persons who are *unable* to make payments. Rogers testified that "refusal is a word I wouldn't use; I haven't refused to pay anything because if I would have it, they would have it." Rogers also testified that the institution will not accept partial payments, but will only accept the full payment of $25 each quarter.

On February 3, 2012, Mr. McLaughlin sent Rogers a letter advising him that he was "delinquent" in his payments.[5] On May 10, 2012, Mr. McLaughlin wrote to Rogers again, stating that he was now in "default," and "the total amount of the debt is due in full

---

[3] According to Rogers, his placement in the SHU was not for disciplinary reasons.

[4] E-mail from Dean Gleason to Jean Conner dated June 19, 2012 (docket number 380-2).

[5] Letter from Martin McLaughlin to Isom Rogers dated February 3, 2012 (Government's Exhibit 3).

on or before June 20, 2012."[6] At the time of hearing, Rogers would not commit to making *any* payments toward his obligation.[7]

## *II. DISCUSSION*

A payment of restitution is delinquent if it is more than 30 days late. 18 U.S.C. § 3572(h). A payment of restitution is in default if it is delinquent for more than 90 days. 18 U.S.C. § 3572(i). Here, Rogers was ordered to make monthly restitution payments of at least $25 per quarter. Rogers agreed to pay $25 per quarter beginning September 2011. Accordingly, the payment was due in November 2011, and was "delinquent" when it was not paid before the end of December 2011. The payment was "in default" when it was not made by the end of March 2012.

If the Court finds a defendant is in default on a payment of restitution, then the Court may impose a sanction pursuant to 18 U.S.C. § 3613A.[8] The Government asks the Court to find Rogers in default on his restitution payments and impose an appropriate sanction. Rogers admits he has not made payments as required by the judgment or his subsequent agreement, but argues that his failure to do so has not been willful. I recommend that the Court find Rogers in default on the payment of his restitution – a matter which is not seriously in dispute.

The more difficult issue is what sanction may be appropriate. In its brief, the United States asks that "this Court re-sentence defendant for willful failure to pay his

---

[6] Letter from Martin McLaughlin to Isom Rogers dated May 10, 2012 (Government's Exhibit 4).

[7] Because of payments by co-defendants, the restitution balance has been reduced to $13,306.54.

[8] 18 U.S.C. § 3613A(a)(1) states:
> Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, hold the defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, accept a performance bond, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

restitution obligation to the victims of his offense."[9] At the hearing, Mr. McLaughlin advised the Court that "the United States seeks simply to have regular payments of $25 per quarter pursuant to the Court's Order," and suggested other possible sanctions. For example, Mr. McLaughlin suggested Rogers could be found in contempt of Court and required "to serve dead time until he's able to make the payment." Alternatively, the Government suggests that money coming into Rogers' prison account "be immediately seized and turned over in satisfaction of the debt."

Many of the sanctions found in section 3613A are unavailable under these circumstances. The Code enumerates eight specific sanctions, together with a catch-all sanction. Specifically, the Court may:

1. revoke probation or a term of supervised release,
2. modify the terms or conditions of probation or term of supervised release,
3. resentence a defendant pursuant to section 3614,
4. hold the defendant in contempt of court,
5. enter a restraining order or injunction,
6. order the sale of property of the defendant,
7. accept a performance bond,
8. enter or adjust payment schedule, or
9. take any other action necessary to obtain compliance with the order

18 U.S.C. § 3613A(a)(1).

The sanctions identified in section 3613A which may be applicable in this case include resentencing Rogers, holding Rogers in contempt of Court, or taking "other action necessary to obtain compliance." Mr. McLaughlin conceded at the hearing that if the Court is considering resentencing Rogers or finding him in contempt of court, then Rogers would be entitled to appointment of counsel. The resulting cost to the taxpayer would presumably exceed the $25 per quarter which Rogers is required to pay while imprisoned.

---

[9] Government's Brief (docket number 380-1) at 5.

None of the cases cited by the Government in its brief involve the imposition of sanctions on a defendant who is still in prison. *See, e.g.*, *United States v. Holt*, 664 F.3d 1147 (8th Cir. 2011) (supervised release revoked for willfully failing to pay restitution as ordered); *United States v. Montgomery*, 532 F.3d 811 (8th Cir. 2008) (same). The United States has not cited any case involving the imposition of sanctions on a prisoner who is in default on a restitution order, and the Court has found none.

In fashioning an appropriate sanction, the Court must consider Rogers' employment status, earning ability, and financial resources.[10] While he remains in prison, Rogers' earning ability is limited and there is no evidence that he has any independent financial resources. The Court must also consider Rogers' "willfulness" in failing to comply with the Court's Order. The Government notes that on two occasions Rogers received $50 from his family, but did not pay any amount toward his obligation. While Rogers testified that "it's hard to save money," it was not necessary for him to "save." Instead, all that was required was a willingness to devote some of the money he received toward the satisfaction of his Court-ordered obligation. Accordingly, notwithstanding his meager earnings, I believe Rogers' failure to make any payments in satisfaction of the Judgment has been willful.

After considering all of the circumstances, I believe the Bureau of Prisons should be authorized and directed to seize all money coming into Rogers' prison account until he is current in his restitution obligation. By the end of August 2012, Rogers will owe $100. After Rogers becomes current in his obligation, then his prison account would no longer be seized automatically and he would be given an opportunity to voluntarily pay $25 per

---

[10] The factors to be considered in determining an appropriate sanction are found in the Code.
> In determining what action to take, the court shall consider the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order of a fine or restitution.

18 U.S.C. § 3613A(a)(2).

quarter as ordered. If Rogers stubbornly refuses to pay any amount toward his Court-ordered obligation to the victims, then the Court could consider additional sanctions upon further application by the Government.

### III. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Determine Default and Additional Sanctions (docket number 380) filed by the United States be **GRANTED** as follows: The Court should authorize and direct the Bureau of Prisons to seize all money coming into Rogers' account until he is current in his restitution obligation. After Rogers becomes current, then he would be given an opportunity to voluntarily pay not less than $25 per quarter, as previously ordered.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 1, 2012.*

DATED this 2nd day of August, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA